UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:09-CV173-F

| | | |
|---|---|---|
| BALD HEAD ASSOCIATION., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| PETER C. CURNIN, | ) | |
| Defendant. | ) | |

This matter is before the court on Plaintiff's Motion to Remand [DE-9], Plaintiff's Motion to Dismiss, Motion for Judgment on the Pleadings, and Reply to Counterclaim [DE-21] and Defendant's Motion for Leave to Amend Answer and Counterclaim & Notice of Removal [DE-42]. All motions have been fully briefed and are ripe for disposition.

## I. PROCEDURAL AND FACTUAL HISTORY

Defendant Peter C. Curnin is the owner of Lot 333, Stage I, Bald Head Island, as shown in Book 1002, Page 509 and Book 1409, Page 741 of the Brunswick County Registry ("the Property"). Plaintiff Bald Head Association contends it is a non-profit corporation whose members consists of the owners of properties located within Stage I of Bald Head Island, Brunswick County, North Carolina. As an owner of property in Stage I, Bald Head Island, Curnin is a member of Bald Head Association. According to Bald Head Association, Curnin is subject to the Amended and Restated Declaration of Covenants, Conditions and Restrictions for Bald Head Association filed at Book 1359, Page 1 of the Brunswick County Registry ("the Covenants").

The parties to this action have a history of disputes concerning both the Property and the Covenants. In 2001, Bald Head Association filed a lawsuit (the "2001 lawsuit") against Curnin

regarding his failure to comply with the Covenants, which Curnin removed to this court. The 2001 lawsuit was remanded to state court, and summary judgment was granted in favor of Bald Head Association, ultimately resulting in a judgment against Curnin in the amount of $60,000.

In 2003, Curnin filed a separate, sealed *qui tam* action in this court against Bald Head Island Limited ("the *qui tam* action"). Bald Head Island Limited ("BHI Limited") is the successor to the developers of Stage I of Bald Head Island, and according to Bald Head Association, has had no rights under the Covenants since 2004. In the *qui tam* action, Curnin alleged Bald Head Island is owned by the United States as a "war prize." According to Curnin, Bald Head Association therefore has no interest in the property. The United States declined to intervene, and the case ultimately was dismissed for failure to prosecute. Curnin has appealed this ruling to the Fourth Circuit Court of Appeals.

Bald Head Association filed the instant action on September 18, 2009, in Brunswick County Superior Court seeking injunctive relief to address Curnin's alleged non-compliance with the Covenants, as well as the recovery of dues, fines and assessments. On October 28, 2009, Curnin removed this action to this court, and on November 4, 2009, filed an Amended Notice of Removal. In the Amended Notice of Removal, Curnin alleges that removal is proper under 28 U.S.C. §§ 1441(b), 1442(a), 1443(1), and 1443(2). Specifically, he alleges that as a relator in the *qui tam* action, he is an officer of the court. He also contends he cannot have a fair trial in Brunswick County Superior Court, and that he is a whistle-blower and Federal Bureau of Investigation informant and is entitled to protection as such.

2

Curnin filed his Answer and Counterclaim on December 8, 2009. His Counterclaim alleges that Bald Head Association, its agents, and attorneys, the Village of Bald Head Island and BHI Limited have engaged in a conspiracy to retaliate against him. He seeks a temporary restraining order, preliminary and permanent injunction, and alleges claims for a declaratory judgment, violation of 42 U.S.C. §§ 1981, 1985, trespass under state law, "breach of duties," fraud, libel and slander to title, wrongful execution, unjust enrichment, intentional infliction of emotional distress, and unfair and deceptive trade practices. Bald Head Association filed its Motion to Dismiss all claims on January 27, 2010.

Pursuant to Curnin's motion, this action was stayed from January 25, 2010 through March 5, 2010, to allow the parties to mediate. The parties' efforts at mediation were unsuccessful, and on March 22, 2010, Curnin filed his opposition to the Motion to Remand and Motion to Dismiss, and also filed a Motion for Leave to Amend Answer and Counterclaim & Notice of Removal. Curnin did not attach his proposed Amended Answer and Counterclaim or proposed Amended Notice of Removal, but instead appears to want to incorporate by reference his own contemporaneously filed Declarations into the documents.

## II. ANALYSIS

Because the Motion to Remand goes to the heart of whether this court has subject matter jurisdiction over this action, the court will address the Motion to Remand first.

### A. Motion to Remand

Curnin contends that removal of this action to this court is proper under three separate statutes: 28 U.S.C. § 1441, 28 U.S.C. § 1442, and 28 U.S.C. § 1443. The court will address each

3

statute in turn, keeping in mind "[t]he burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chem. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994).

### 1. Removal under 28 U.S.C. § 1441

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." In this case, Curnin contends federal question jurisdiction is present.

Under 28 U.S.C. § 1331, federal question jurisdiction exists when a plaintiff's cause of action "arises under" federal law. "Under what has become known as the well-pleaded complaint rule, § 1331 federal question jurisdiction is limited to actions in which the plaintiff's well-pleaded complaint raises an issue of federal law; actions in which defendants merely claim a substantive federal defense to a state-law claim do not raise a federal question." *In re Blackwater Security Consulting, LLC*, 460 F.3d 576, 584 (4th Cir. 2006). Accordingly, to determine "whether an action presents a federal question under § 1331, a court must first discern whether federal or state law creates the cause of action." *Mulcahey*, 29 F.3d at 152. If federal law creates the cause of action, a district court "unquestionably" has federal subject matter jurisdiction. *Id.* If state law creates the cause of action, "federal question jurisdiction depends on whether the plaintiff's demand 'necessarily depends on resolution of a *substantial* question of federal law.' " *Id.* (quoting *Franchise Tax Bd. v.*

4

*Constr. Laborers Vacation Trust*, 463 U.S. 1, 28 (1983)(emphasis added) and citing *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 809 (1986)).

Here, Curnin does not (and indeed cannot) contend that federal law creates the cause of action. Instead, he argues that by attaching an opinion from the Fourth Circuit Court of Appeals from the *qui tam* action, Bald Head Association "shouted out its recognition of the federal issues in this case." Resp. in Opp. to Mot. for Remand [DE-46] at p. 2. Bald Head Association, for its part, contends that its attachment of the opinion from the *qui tam* action was inadvertent.[1] Whether Bald Head Association's attachment of the opinion from the *qui tam* action was inadvertent or purposeful, however, makes no difference. Bald Head Association's claims plainly do not "necessarily depend on resolution of a substantial question of federal law." The attachment of the *qui tam* action opinion does nothing to change this. Curnin has failed to establish that this court has federal question jurisdiction over this action.

### 2. Removal under 28 U.S.C. § 1442

Curnin also contends that 28 U.S.C. § 1442(a)(1) and (a)(3) provide a basis for removal of this action. The statute provides:

> (a) a civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place where it is pending:
> (1) the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title, or authority claimed under any Act of Congress

---

[1] It appears that Bald Head Association intended to attach *Bald Head Association v. Curnin*, 176 N.C. App. 766, 627 S.E.2d 350, *cert. denied*, 360 N.C. 531, 633 S.E.2d 672 (2006), which is specifically referenced in the Complaint. *See* Compl. [DE-1-3] ¶ 5 ("A copy of the North Carolina Court of Appeals' decision in *Curnin I* is attached hereto as Exhibit A.").

5

> for the apprehension or punishment of criminals or the collection of the revenue
>
> . . .
>
> (3) Any officer of the courts of the United States, for any act under color of office or in the performance of his duties.

28 U.S.C. § 1442 (a)(1) and (a)(3). Suits against federal officers are an exception to the "well-pleaded complaint" rule. *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). "Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Id.*

To qualify under section 1442(a)(1), a defendant must (1) be an officer of the United States *or* a person acting under an officer of the United States; (2) show a nexus or "causal connection" between the alleged conduct and the official authority; and (3) have a colorable federal defense. *See In re MTBE Prods. Liability Litigation*, 488 F.3d 112, 124 (2d Cir. 2007); *Virden v. Altria Group, Inc.*, 304 F.Supp.2d 832, 843 (N.D.W.Va. 2004). Here, the record indicates that Curnin is neither an officer of the United States nor a person acting under an officer of the United States.

Relators under the False Claims Act are not "officers" of the United Staets. The Fifth Circuit, in *Riley v. St. Luke's Episcopal Hospital*, 252 F.3d 749 (5th Cir. 2001), concluded that the False Claims Act's *qui tam* provisions do not violate the Appointments Clause in the Constitution because "*qui tam* relators are not officers of the United States." *Id.* at 757. In so concluding, the *Riley* court explained:

> Supreme Court precedent has established that the constitutional definition of an "officer" encompasses, at a minimum, a continuing and formalized relationship of employment with the United States Government. There is no such relationship with regard to *qui tam* relators, and they therefore are not subject to either the benefits or the requirements associated with the offices of the United States. For

6

instance, *qui tam* plaintiffs do not draw a government salary and are not required to establish their fitness for public employment.

*Id.* at 757-58 (internal citations omitted). Curnin offers no reason, much less a compelling one, why the definition of the word "officer" in § 1441(a)(1) should be broader than the constitutional definition of "officer." Similarly, Curnin's role as an informant is not "continuing and formalized relationship of employment with the United States Government." *Riley*, 252 F.3d at 758. Curnin is not an officer of the United States Government.

Nor does the record suggest that Curnin was acting under an officer of the United States in his capacity as a relator. The Supreme Court has explained that "under" in the context of § 1442(a)(1)

> must refer to what has been described as a relationship that involves "acting in a certain capacity, considered in relation to one holding a superior position or office." 18 OXFORD ENGLISH DICTIONARY 948 (2d ed. 1989). That relationship typically involves "subjection, guidance or control." WEBSTER'S NEW INTERNATIONAL DICTIONARY 2765 (2d ed. 1953). *See also* FUNK & WAGNALLS NEW STANDARD DICTIONARY OF THE ENGLISH LANGUAGE 2604 (1942)(defining "under" as meaning "[s]ubordinate or subservient to," "[s]ubject to guidance, tutorship, or direction of"); 18 OXFORD ENGLISH DICTIONARY, *supra* at 949 ("[s]ubject to the instruction, direction, or guidance of"). In addition, precedent and statutory purpose make clear that the private person's "acting under" must involve an to *assist*, or to help *carry out, the duties or tasks of the federal superior*.

*Watson v. Phillip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007)(the last emphasis added). Curnin, in his role as a relator, was not acting subject to the guidance, tutorship, or direction of any federal officer.

The Seventh Circuit Court of Appeals has concluded that under certain circumstances, an informant acting at the behest of the Federal Bureau of Investigations is a person "acting under an officer of the United States." *Venezia v. Robinson*, 16 F.3d 209, 211-12 (7th Cir. 1994). In *Venezia*,

7

the FBI conducted a sting operation against an operator of illegal video poker machines, Venezia. *Id.* at 210-211. An agent of the Illinois Liquor Control Commission solicited a bribe from Venezia, in exchange for no further raids on Venezia's establishment, where upon Venezia sued the agent in state court, asking for an injunction against extortion. *Id.* at 210. The agent removed the case to federal court, contending that in soliciting the bribe, he was acting under the direction of the FBI, and in fact was wearing a wire. *Id.* After Venezia appealed the district court's denial of his motion to remand, the Seventh Circuit concluded that removal was proper: "A federal agent or informant who asserts that he was (or is) acting in the course of a criminal investigation is entitled to removed under § 1442(a)(1), presenting to the federal tribunal all questions of justification and immunity." *Id.* at 212.

*Venezia*, however, does not carry the day for Curnin in this case. In *Venezia*, as in other cases where removal pursuant to § 1442(a)(1) has been held to proper, the defendant is sued for his actions that occurred at the direction of a federal officer or agency. Here, Curnin is not being sued for his actions in providing assistance to the FBI; he is being sued for allegedly failing to comply with the Covenants and for the recovery of allegedly-due fines and assessments. The record makes clear that the alleged actions that led to this suit–non-compliant paint colors, unapproved work to the property, etc.–were not performed or omitted by Curnin pursuant to the direction of the FBI or any other federal officer or agency. Unlike in *Venezia*, there is no nexus between the alleged conduct–Curnin's alleged painting of his dwelling or refusal to pay fines and assessments–and his alleged "official authority" as an informant. Consequently, Curnin has failed to satisfy all the elements under § 1442(a)(1).

8

Similarly, Curnin cannot satisfy § 1442(a)(3), which provides for removal by "[a]ny officer of the courts of the United States, for any act under color of office or in the performance of his or her duties." Curnin does not explain how he can be considered an "officer of the courts of the United States." Nevertheless, even if Curnin could somehow make this showing, he has not shown that the actions underlying the claims in this suit were taken "under color of office or in the performance of his or her duties."

Because Curnin cannot satisfy the elements of either § 1442(a)(1) or (a)(3), removal of this action on that basis is improper.

### 3. Removal pursuant to 28 U.S.C. § 1443

Curnin's final justification for removal of this action rests upon 28 U.S.C. § 1443, which provides:

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
> (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;
> (2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

28 U.S.C. § 1443.

The Supreme Court has explained that a two-part test is applicable in determining whether a case may be properly removed pursuant to § 1443(1). *Conrad v. Robinson*, 871 F.2d 612, 614 (6th Cir. 1989)(citing *Johnson v. Mississippi*, 412 U.S. 213 (1975); *City of Greenwood v. Peacock*, 384 U.S. 808(1966); *Georgia v. Rachel*, 384 U.S. 780 (1966)). First, "the right denied defendant must

9

be one that arises under a federal law that provides for specific civil rights stated in terms of racial equality; second, the defendant must be unable to or be denied the opportunity to enforce these specified federal rights in the courts of the state in question." *Id.* (citing *Johnson*, 421 U.S. at 219.).

Here, the only potentially applicable law cited by Curnin which would satisfy the first part of the test is 42 U.S.C. § 1985(1), which prohibits conspiracies to prevent a federal officer from performing his duties or from accepting such office.[2] The Supreme Court's decision in *Kush v. Rutledge*, 460 U.S. 719 (1983), however, observed that § 1985(1) "contain[s] no language requiring that the conspirators act with the intent to deprive their victims of the equal protection of the laws." *Id.* at 724-25 (examining § 1985(1), the first portion of § 1985(2), and the second part of § 1985(3)). Indeed, the plain text of § 1985(1) provide no reference to equal rights, much less racial equality. Moreover, as this court already has discussed at length, Curnin is not an officer of the United States. Consequently, Curnin cannot satisfy the first part of the test articulated by the Supreme Court for removal under § 1443(1), and removal under that provision is not proper.

Nor is removal appropriate under § 1443(2), which allows for removal of actions "[f]or any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law." Even if Curnin could somehow said

---

[2] 42 U.S.C. § 1985(1) provides:

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the law discharge thereof, or to injury his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties.

10

to be acting under color of authority *derived from any law providing for **equal rights***, as this court has explained, he is *not* being sued for his actions as an informant or relator. He is being sued for his actions concerning his home and his alleged financial obligations to a homeowner's association. *Cf. Harpagon Co., LLC v. FXM, P.C.*, 653 F.Supp.2d 1336, 1348 (N.D. Ga. 2009)(explaining that removal of collection actions against an attorney and his law firm were not proper under § 1443(2) where attorney claimed to be a *de facto* federal agent by reporting evidence of alleged felonies; the collection action sought the satisfaction of a state court judgment, and was not based on attorney's reporting of alleged crimes). Removal under § 1443(2) is not appropriate.

Because the removal of this action is not proper under 28 U.S.C. §§ 1441, 1442, or 1443, Bald Head Association's Motion to Remand [DE-9] is ALLOWED.

## B. Remaining Motions

Because this court has determined that the removal of this action was not proper, it does not reach either Plaintiff's Motion to Dismiss, Motion for Judgment on the Pleadings, and Reply to Counterclaim [DE- 21] or Defendant's Motion for Leave to Amend Answer and Counterclaim & Notice of Removal [DE-42].

## III. CONCLUSION

Plaintiff's Motion to Remand [DE-9] is ALLOWED, and it is ORDERED that this case be REMANDED to the General Court of Justice, Superior Court Division, Brunswick County, North Carolina. Because this court has determined that the removal of this action was not proper, it does not reach either Plaintiff's Motion to Dismiss, Motion for Judgment on the Pleadings, and Reply to

Counterclaim [DE- 21] or Defendant's Motion for Leave to Amend Answer and Counterclaim & Notice of Removal [DE-42].[3]

SO ORDERED.

This the 10th day of May, 2010.

                                                      James C. Fox
                                                     Senior United States District Judge

---

[3] Although the court did not reach Defendant's Motion for Leave to Amend Answer and Counterclaim and Notice or Removal [DE-42], the court did consider the information contained in Defendant's Declarations [DE-43; DE-44] when ruling on the Motion to Remand.

12